

# SUPREME COURT OF MISSOURI
## en banc

MISSOURI COALITION FOR THE )     *Opinion issued July 16, 2019*
ENVIRONMENT and CAROLYN JOHNSON, )
                                )
         Appellants, )
                                )
v.                                 )       No. SC97591
                                )
STATE OF MISSOURI and CLEAN WATER )
COMMISSION OF THE STATE OF )
MISSOURI, )
                                )
         Respondents. )

### APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
**The Honorable Daniel R. Green, Judge**

The Missouri Coalition for the Environment and one of its members, Carolyn Johnson (collectively, the Coalition), challenge the circuit court's dismissal of the Coalition's petition for declaratory judgment and injunctive relief against the State and the Clean Water Commission. This Court finds the Coalition lacks standing and affirms the dismissal.

**Factual and Procedural History**

Missouri's Clean Water Commission is created by statute as a "water contaminant control agency" within the department of natural resources. § 644.021.[1] The Commission is composed of seven members appointed by the governor with the advice and consent of the senate. In 2016, the General Assembly enacted House Bill No. 1713, which changed the requirements for the composition of the Commission by amending § 644.021. Prior to HB 1713, the pertinent portion of § 644.021.1, RSMo Supp. 2015 read:

> **All members shall be representative of the general interest of the public** and shall have an interest in and knowledge of conservation and the effects and control of water contaminants. **Two such members, but no more than two, shall be knowledgeable concerning the needs of agriculture, industry or mining and interested in protecting these needs** in a manner consistent with the purposes of sections 644.006 to 644.141. One such member shall be knowledgeable concerning the needs of publicly owned wastewater treatment works. **Four members shall represent the public**.

(Emphasis added.). The pertinent language from § 644.021.1 as amended reads:

> **All members shall be representative of the general interest of the public** and shall have an interest in and knowledge of conservation and the effects and control of water contaminants. **At least two members shall be knowledgeable concerning the needs of agriculture, industry or mining and interested in protecting these needs** in a manner consistent with the purposes of sections 644.006 to 644.141. One such member shall be knowledgeable concerning the needs of publicly owned wastewater treatment works. **No more than four members shall represent the public**.

(Emphasis added.). Both versions require all appointees be representative of the "general interest of the public." But under the amended version, "at least two members," rather than "no more than two," shall be knowledgeable about the needs of agriculture, industry, or

---

[1] Statutory citations are to RSMo 2016 unless otherwise indicated.

mining and interested in protecting such needs, and no more than four members shall represent the public.

In February 2017, the Coalition filed a petition in the circuit court for declaratory judgment and injunctive relief challenging the validity of § 644.021, as amended by HB 1713. The Coalition alleged violations of the Missouri Constitution, article III, § 23, limiting a bill to one subject and article III, § 21, limiting a bill to its original purpose. In its petition, the Coalition highlighted its participation in various Commission activities and membership in certain stakeholder groups and committees. The State filed a motion to dismiss, asserting the Coalition had not shown taxpayer standing. In reply, the Coalition conceded it did not have taxpayer standing, but argued it had standing pursuant to § 516.500. The circuit court dismissed the Coalition's petition with prejudice for lack of standing.[2] The Coalition appeals, arguing the circuit court erred in dismissing their petition.[3]

## Standard of Review

This Court reviews the issue of standing *de novo*. *Mo. State Med. Ass'n v. State*, 256 S.W.3d 85, 87 (Mo. banc 2008). "Litigation of a claim requires plaintiffs to show that they have standing by demonstrating a personal interest in the litigation arising from a threatened or actual injury." *St. Louis Cty. v. State*, 424 S.W.3d 450, 453 (Mo. banc 2014)

---

[2] The circuit court also considered and rejected the Coalition's claims on the merits.
[3] Because this appeal calls into question the validity of a statute, article V, § 3 confers exclusive appellate jurisdiction on this Court.

3

(internal quotations and emphasis omitted). When standing is resolved on a motion to dismiss, this Court assumes all of the facts alleged in the plaintiffs' petitions are true. *Id.*

**Analysis**

"For a party to have standing to challenge the constitutionality of a statute, he must demonstrate that he is adversely affected by the statute in question" to ensure "there is a sufficient controversy between the parties [so] that the case will be adequately presented to the court." *W.R. Grace & Co. v. Hughlett*, 729 S.W.2d 203, 206 (Mo. banc 1987) (internal quotations omitted) (alteration in original). Standing further requires a petitioner to demonstrate a personal stake in the outcome of the litigation, meaning "a pecuniary or personal interest directly at issue and subject to immediate or prospective consequential relief. *Schweich v. Nixon*, 408 S.W.3d 769, 775 (Mo. banc 2013).

*No taxpayer standing*

Although the Coalition originally alleged in its petition that it had taxpayer standing, the Coalition, after conducting discovery, conceded it does not have taxpayer standing because it could not establish that state funds were used to fund the Commission. As the Coalition noted in its briefing, this Court has held taxpayer standing requires "direct expenditure of funds generated through taxation," defined as "a sum paid out, without any intervening agency or step, of money or other liquid assets that come into existence through the means by which the state obtains the revenue required for its activities." *Manzara v. State*, 343 S.W.3d 656, 660 (Mo. banc 2011) (internal quotations omitted).[4] Because there

---

[4] In *Manzara*, this Court stated "a taxpayer must establish that one of three conditions exists: (1) a direct expenditure of funds generated through taxation; (2) an increased levy

4

is no evidence or record before the Court that any provision of HB 1713 would result in the direct expenditure of tax revenues, the Coalition has failed to establish it has taxpayer standing.[5]

*No legally cognizable interest or threatened or actual injury*

The Coalition also does not have a legally cognizable interest in the subject matter of the litigation or a threatened or actual injury to establish standing. The Coalition bears the burden of showing it is adversely affected by HB 1713 (2016). *Id*. at 659; *see also W.R. Grace*, 729 S.W.2d at 206. While the Coalition alleges "every Missouri citizen has an interest in a legislature that observes the state Constitution," the law provides otherwise. "[T]he generalized interest of all citizens in constitutional governance" does not invoke standing. *Whitmore v. Arkansas*, 495 U.S. 149, 160 (1990) (internal quotations omitted). The Coalition also alleges an interest due to the Coalition, and its members sharing an interest in protecting water quality and participating with the department of natural resources and the Commission on water quality issues. However, this Court explicitly

---

in taxes; or (3) a pecuniary loss attributable to the challenged transaction of a municipality." *Manzara*, 343 S.W.3d at 659 (citing *E. Mo. Laborers Dist. Council v. St. Louis Cty.*, 781 S.W.2d 43, 46 (Mo. banc 1989)). There is no assertion HB 1713 increased taxes or the Coalition suffered a pecuniary loss attributable to a transaction of a municipality; therefore, these bases for taxpayer standing do not apply.

[5] Because the Coalition's challenges under article III, §§ 21 and 23 of the Missouri Constitution are to the procedures employed to enact the entirety of HB 1713, proof of direct expenditures of tax revenues due to any of the sections enacted in HB 1713 would have been sufficient to establish taxpayer standing to bring the Coalition's challenges. The Coalition appears to focus solely on whether the provisions in HB 1713 pertaining to the Commission required direct expenditures and concedes they did not. The Coalition appears to make no attempt to establish taxpayer standing by showing a direct expenditure of tax revenues would result from any other provision of HB 1713.

rejected this argument in *Missouri Coalition for the Environment v. Joint Committee on Administrative Rules*, 948 S.W.2d 125, 132 (Mo. banc 1997). The Coalition does not allege, nor can it show, that the speculative potential changes to the Commission membership threatened or actually injured it, as there is no way to foresee if the new membership will be less favorable to their cause or interest in clean water. "For a party to have standing to challenge the constitutionality of a statute, he must demonstrate that he is adversely affected by the statute in question." *W.R. Grace*, 729 S.W.2d at 206 (internal quotations and emphasis omitted). Accordingly, because the Coalition cannot show a cognizable interest or threatened or actual injury, it cannot establish standing to bring this action.

*Section 516.500 does not provide the Coalition with an independent basis for standing*

The crux of the Coalition's argument relies on § 516.500, which the Coalition asserts provides it with standing. Section 516.500 sets forth a statute of limitations for single-subject and original-purpose, procedural defect claims to bills and legislation. The Coalition asserts that § 516.500 provides more than a statute of limitations and "is also a statute of standing." The relevant portion of § 516.500 provides:

> No action alleging a procedural defect in the enactment of a bill into law shall be commenced, had or maintained by **any party** later than the adjournment of the next full regular legislative session following the effective date of the bill as law, **unless it can be shown that there was no party aggrieved who could have raised the claim** within that time.

(Emphasis added). The statute goes on to say if there is no aggrieved party initially, then once a party can show it is the first party to be aggrieved, the party must bring the claim

6

before the adjournment of the next full legislative session after the party becomes aggrieved—but no later than five years after the bill becomes effective. *Id.*

The Coalition alleges, because it brought its action prior to the adjournment of the legislative session after HB 1713 was enacted, it does not have to show it is an "aggrieved party" because it is "any party." However, the plain text of § 516.500 refutes the Coalition's interpretation. Its plain language—"no party aggrieved who could have raised a claim within that time"—acknowledges that one must be aggrieved to bring a claim. Further, interpreting § 516.500 as the Coalition urges, and allowing "any party" to bring suit, would vastly change the law of standing in single-subject, original-purpose procedural defect claims and would suggest a long list of cases finding the lack of standing to be incorrect. *See, e.g., St. Louis Cty.,* 424 S.W.3d at 453–54 (holding government entities and officials lacked standing to challenge the constitutional validity of legislation relating to a fund for service of process fees); *Manzara*, 343 S.W.3d at 664 (holding taxpayers lacked standing to challenge the constitutional validity of legislation providing tax credits); *Mo. State Med. Ass'n,* 256 S.W.3d at 89 (holding association and its members lacked standing to challenge the constitutional validity of legislation allowing midwifery). As the circuit court noted, § 516.500 does not provide standing to the Coalition nor eliminate the requirement that the Coalition have standing to bring this action.

**Conclusion**

For these reasons, the Coalition has failed to demonstrate it has standing to bring its claims for declaratory and injunctive relief, and the circuit court rightly dismissed its petition. Accordingly, the judgment is affirmed.[6]

W. Brent Powell, Judge

All concur.

---

[6] Because the issue of standing is dispositive in this appeal, the Court need not reach, and expresses no view upon, the circuit court's determination that the Coalition's constitutional claims lack merit.